TIMOTHY COURCHAINE
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant United States Attorney
Arizona State Bar No. 12700
Email: denise.faulk@usdoj.gov
SARAH S. LETZKUS
Assistant U.S. Attorney
Arizona State Bar No. 027314
Email: sarah.letzkus@usdoj.gov
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
*Attorneys for Respondents*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| State of Arizona, | CV-25-00468-TUC-RM (MAA) |
| Plaintiff/Petitioner, | **MOTION FOR RECONSIDERATION** |
| v. | |
| Pam Bondi, et al., | |
| Defendants/Respondents. | |

Respondents Van Bayless, United States Acting Marshal for the District of Arizona, and Core Civic Warden, appearing in their official capacities through undersigned counsel, hereby move for reconsideration of this Court's September 19, 2025, Order granting Motion for Hearing (Doc. 19).  The Court granted the motion before Respondents were given an opportunity to respond to it.  The hearing should be vacated because it violates separation of powers and comity principles; Petitioner has failed to identify a legal basis for the relief it seeks; Petitioner has not identified a disputed issue of material fact to be heard; and the hearing threatens privilege protections.

This motion is supported by the following Memorandum of Points and Authorities and attached exhibit.

**Memorandum of Points and Authorities**

I.   **Background**

On June 30, 2025, Aguirre, then illegally in the United States, violated several federal laws, including 18 U.S.C. §§ 922(g)(5)(A), 924(a)(8), 924(c)(1)(A)(iii) and 2119 – including a charge carrying a maximum potential punishment of life in prison or death. *See Aguirre*, No. 4:25-cr-03393-RM-MAA, Dkt. 1.  The United States charged him with each of the offenses.  *Id.*  He was taken into federal custody on July 2, 2025, and has been in continuous federal custody since.  (Ex. A, Molesky Decl. ¶¶ 3-6.)

Petitioner charged Aguirre with state crimes arising out of the same series of events.  *State of Arizona v. Aguirre*, No. CR20253497-001 (Ariz. July 25, 2025). Petitioner then reached out to federal prosecutors to try to gain federal approval for a writ of habeas corpus ad prosequendum so that Petitioner could ask a state court to issue a writ summoning Aguirre to state court.  (Doc. 1-4 at 3-10.)  Exercising the authority vested exclusively in the executive branch, *see infra* Part III.A, federal prosecutors ultimately declined to allow Aguirre to be sent to state court during the pendency of these extremely serious federal criminal proceedings because "it is not in the interests of justice to turn over Aguirre to the County on a writ for an initial appearance, or for any other parallel proceedings in state court." (*Id.* at 2.)

Petitioner then brought the instant Petition, asking this Court to issue a writ of habeas corpus ad prosequendum – not to summon Aguirre to this Court to face prosecution as such a writ provides, but to send Aguirre to state court.  (Doc. 1.) Petitioner improperly publicly filed documents with the Petition.  (Doc. 1-1, 1-3.) Respondents filed a Motion to Seal the improperly publicly filed documents.  (Doc. 7.) In the motion, Respondents noted that Petitioner failed to cite a valid basis for its requested writ and that writs of habeas corpus ad prosequendum are used to summon a prisoner to answer in the summoning jurisdiction, not to send a prisoner to another jurisdiction. (*Id.* at 3.)  Respondents did not indicate that they would approve of a state court writ summoning Aguirre to state court. (*Id.*)  Nor would such a position have been

consistent with the federal prosecutor's refusal to do so (Doc. 1-4 at 2) or the explanation in the motion that "the interests of justice would be better served by completing the federal prosecution of Aguirre before transferring him to the State of Arizona for proceedings on the State indictment." (Doc. 7 at 3). Nevertheless, the Pima County prosecutors separately sought a writ from the Pima County Superior Court, which issued on September 11, 2025. *State of Arizona v. Aguirre*, No. CR20253497-001. The U.S. Marshals declined to honor the writ, as the Pima County prosecutors previously had recognized they would.[1]

      Petitioner then filed the motion for a hearing. (Doc. 17.) Petitioner expresses surprise that the federal prosecutors opposed the state court writ, asserting that Petitioner requested the writ in "response" to Respondents' argument that only the summoning jurisdiction has authority to issue a writ.[2] (*Id.* at 2.) Petitioner argues that *United States v. Warren*, 610 F.2d 680, 684-85 (9th Cir. 1980), "strongly suggests the State – not the Government – has the right to pursue its prosecution." (*Id.* at 3.) But Petitioner does not explain why Aguirre is in federal custody subject to this Court's jurisdiction if that is so. (*Id.*) Petitioner argues that "[a] side-by-side comparison of the Federal Indictment with the State Indictment reveals" the Respondents' explanation that each of Aguirre's victims is a federal victim "to be demonstrably false," without undertaking any analysis of federal law. (*Id.*) And Petitioner asserts that this Court has jurisdiction to issue the writ because *Marbury v. Madison*, 5 U.S. 137, 177 (1803), says it is "the province of the federal courts to say what the law is" and "United States District Courts have a broad reservoir of inherent equitable powers to issue injunctions binding the parties before them." (*Id.* at 4.)

      Petitioner concludes with a request that this "Court schedule a Hearing as quickly as is reasonable to take evidence and hear argument to consider the State's request for a

---

[1] On August 5, 2025, the Pima County prosecutor recognized, "[t]he Marshal's will not accept service of a writ without the USAO agreeing to its terms." (Doc. 1-4 at 3.)

[2] Notably, Petitioner does not address the fact that this Court is not the *summoning* jurisdiction and, therefore, does not have authority to issue the writ.

Writ of Habeas Corpus ad Prosequendum (Doc. 1)." (Doc. 17 at 5.)  The Court granted the motion less than 24 hours later without permitting Respondents time to respond to the motion.  (Doc. 19.)

## II.     Legal Standard for Motion for Reconsideration

LRCiv 7.2(g)(1) provides that a motion for reconsideration may be filed upon "a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the court's] attention earlier with reasonable diligence."  A movant must specifically indicate those matters it contends "were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order."  *Id.; see, e.g., Tindle v. Astrue*, No. CV-11-907, 2012 WL 5353913, *2 (D. Ariz. Oct. 30, 2012) (noting standard for reconsideration under LRCiv 7.2(g)(1)).

The choice to grant reconsideration is grounded in the sound discretion of the trial court.  *See, e.g., Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).  To obtain reconsideration, a movant must submit some "additional information" justifying relief.  *See, e.g., Montes v. Arizona*, No. CV-11-0267-TUC-CKJ, 2012 WL 2871115, *2 (D. Ariz. July 12, 2012).  To that end, a motion for reconsideration cannot be used to advance arguments or evidence that could have reasonably been raised earlier in the litigation process, *see, e.g., Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009), nor to recapitulate matters already considered by the court, *see, e.g., Arizona v. Frito-Lay, Inc.*, 273 F.R.D. 545, 558-59 (2011).

## III.    This Court should reconsider its Order Setting Hearing.

This Court granted Petitioner's motion for evidentiary hearing (Doc. 17) less than 24 hours after Petitioner filed it without affording Respondents an opportunity to respond. (Doc. 19.)  Accordingly, none of the facts or legal authority presented below could be presented before the Court's ruling.  No hearing is appropriate on the Petition

because the hearing violates separation of powers and comity principles; Petitioner has failed to identify a legal basis for the relief it seeks; Petitioner has not identified a disputed issue of material fact to be heard; and the hearing threatens privilege protections.

### A. A hearing would violate the separation of powers and comity.

Separation of powers and comity require that the Court vacate the evidentiary hearing here. Courts have long held that one sovereignty may "waive its strict right to exclusive custody of [a defendant] for vindication of its laws in order that the other may also subject him to conviction of crime against it," but "[s]uch a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it." *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922).

"The sovereign with priority of jurisdiction (also called 'primary custody') over a defendant may exercise its discretion to relinquish that primary custody to another sovereign, but '[t]his discretionary election is an executive, and not a judicial, function.'" *Bates*, 713 F. Supp. 3d at 1155 (quoting *Warren*, 610 F.2d at 685). In other words, "when it comes to deciding whether to relinquish 'priority of jurisdiction' over a defendant, the executive branch – not the judiciary – is the exclusive decisionmaker." *Id.* at 1155-56. A court "cannot meddle" in the federal executive branch's decision whether to relinquish primary custody, and "[t]his is especially true where, as here, the executive branch expressly opposes [the defendant's] transfer from primary federal custody to state custody." *Id.* at 1156.

"Congress expressly placed the defendant's custody in the hands of the executive branch, not the judiciary, which is consistent with long-standing separation of powers principles that vest 'the determination of custody and service of sentence . . . is a matter of comity to be resolved by the *executive branches* of each sovereign.'" *Id.* at 1158. (Quotation omitted, emphasis in original). "[F]ederal courts do not exercise general oversight of the Executive Branch; they resolve cases and controversies consistent with the authority Congress has given them." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). "Courts do not sit to second-guess or override lawful exercises of executive discretion

5

1  simply because a litigant is dissatisfied with the outcome.  As the Supreme Court has
2  long held, absent a clear statutory violation or constitutional transgression, it is not the
3  role of the judiciary to interfere with how the Executive Branch carries out delegated
4  authority." *Hanson v. Quick*, No. 25-CV-081-RAW-JAR, 2025 WL 1508450, at *7 (E.D.
5  Okla. May 8, 2025), *report and recommendation adopted*, No. CIV-25-81-RAW-JAR,
6  2025 WL 1505427 (E.D. Okla. May 27, 2025), *citing Ponzi*, 258 U.S. at 261-62
7  (recognizing the Executive's primary authority to coordinate inter-sovereign custody
8  arrangements).
9       Petitioner's requested hearing would interfere with the "inviolable rules of
10 comity." *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938).  Comity can only be freely
11 given: "the 'rule of comity,' … means nothing more than *voluntary consent* of the
12 officials or courts who have jurisdiction over the accused given to another court or
13 sovereign to proceed against the accused in a different forum…. In this sense, comity is
14 only a phase of consent by one sovereign to acts of another.  Most of the problems of this
15 field are worked out by executive and administrative officers of the various states without
16 conflict.  It is probably rare that one sovereign, if requested, does not yield to prosecution
17 by another." *Strand v. Schmittroth*, 251 F.2d 590, 597 (9th Cir. 1957) (Emphasis added).
18 "But it does happen." *Id.* at n.11.  And when it does, "[a]s courtesy cannot be enforced,
19 neither can comity." *Id.* at 598.  The jurisdiction with "physical possession of the body"
20 of a prisoner is not "bound to consent" to yield the prisoner to the custody of another
21 jurisdiction or to consent to his prosecution in the other jurisdiction. *Id.* at 600.  Here,
22 federal authorities have declined to consent to yield Aguirre to Petitioner for state
23 prosecution until after the federal prosecution is complete.  Such is well within the
24 federal executive's rights under the rule of comity.
25       This Court should vacate the September 29, 2025, hearing because the relief
26 Petitioner requests violates longstanding separation of powers principles and the rule of
27 comity.
28

**B.   Petitioner has identified no legal basis for issuing a writ.**

In its motion, Petitioner makes the novel argument that this Court may issue the writ because *Marbury v. Madison*, 5 U.S. 137, 177 (1803), says it is "the province of the federal courts to say what the law is" and "United States District Courts have a broad reservoir of inherent equitable powers to issue injunctions binding the parties before them." (Doc. 17 at 4.)  Neither supports issuance of the writ here.

**1.   *Marbury* does not support issuance of a writ.**

The Supreme Court in *Marbury* made clear that when federal courts "say what the law is," they are bound by the Constitution, which is "the *supreme* law of the land," and "that a law repugnant to the constitution is void; and that *courts,* as well as other departments, are bound by that instrument."  5 U.S. at 180 (emphasis in original).  The Supreme Court was not giving carte blanche to federal courts to act as they wish; it was confirming that federal courts must follow the Constitution, even when a statute contradicts the Constitution.  *Id.*  And the Supremacy Clause of the Constitution does not permit a state court writ of habeas corpus ad prosequendum to compel conduct by the U.S. Marshals over the federal government's objection.  U.S. Const. art. VI, cl. 2.  Similarly, the habeas statute on which Petitioner relies does not permit federal courts to issue writs of habeas corpus ad prosequendum to *send* defendants to state court.  28 U.S.C. § 2241(c)(5).  Instead, 28 U.S.C. § 2241(c)(5) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless - ... (5) It is necessary to *bring him into court*... for trial."  (Emphasis added.)  The few courts that have considered a request to *send* a prisoner, rather than *summon* one, have flatly rejected the idea.  *See Lawrence v. Willingham*, 373 F.2d 731, 732 (10th Cir. 1967) ("If a writ of habeas corpus ad prosequendum is to be used to bring Lawrence to trial in a Texas state court, the writ must issue from that court."); *Huston v. State of Kan.*, 390 F.2d 156, 157 (10th Cir. 1968) ("In order for the writ of habeas corpus ad prosequendum to be used to bring appellant to trial in a Kansas state court, the writ must issue from that court.").  In sum, *Marbury* has no application here and does not advance Petitioner's position.

### 2. Petitioner has not shown entitlement to an injunction.

Petitioner's invocation of the Court's equitable power to issue an injunction also fails. The movant seeking an injunction must show the Court that it is entitled to one. Here, Petitioner once again fails to mention the controlling authority on injunctions: *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008). The Supreme Court requires a party seeking a preliminary injunction to show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Petitioner's motion fails to establish the required *Winter* factors.

#### a. Petitioner cannot show a likelihood of success on the merits.

Petitioner cannot show a likelihood of success on the merits given that the Petition does not identify a claim for relief nor a statutory or constitutional basis for a claim. (*See generally* Doc. 1.) Petitioner asserts that *Warren*, 610 F.2d at 684-85, "strongly suggests the State – not the Government – has the right to pursue its prosecution." (Doc. 17 at 3.) But Petitioner does not explain how that could be true when Aguirre is in federal custody and has been since an FBI agent served him with a federal arrest warrant on July 2, 2025. (Ex. A, ¶¶ 3-6.) The District of Alaska rejected the same argument in a remarkably similar case, *United States v. Mujahid*, No. 3:10-CR-0091-HRH, 2018 WL 3800242, at *10-12 (D. Alaska Aug. 9, 2018). In that case, the local police arrested the defendant, he was taken to a federal facility, he was not booked on any state charges before he appeared in federal court on the federal charges, and "the United States ha[d] taken, and continue[d] to take, the position that defendant was a federal prisoner, not a state prisoner." *Id.* On this record, the court concluded that the defendant was a federal prisoner. *Id. Mujahid* is on all fours with the facts of this case. Indeed, Petitioner appears to recognize as much, because it repeatedly has recognized that it needs federal consent to execute a writ issued by the state court. (Doc. 1-4 at 3-5, 10.)

#### b. Petitioner cannot show irreparable harm.

      Petitioner also cannot show the irreparable injury tips in its favor based on its assertion that certain victims are not included in the federal case. As a threshold matter, allowing the state to engage in a parallel prosecution will delay and irreparably harm the federal prosecution, including federal victims. More importantly, as noted in Part III.A., above, the decision of whether to engage in a parallel proceeding is exclusively the province of federal prosecutors under the Supremacy Clause and separation of powers. Issuing injunctive relief that intrudes on these interests, in excess of judicial power, is an irreparable injury to the United States. *See Trump*, 606 U.S. at 860 ("The question before us is whether the Government is likely to suffer irreparable harm from the District Courts' entry of injunctions that likely exceed the authority conferred by the Judiciary Act. The answer to that question is yes."). Petitioner's purported irreparable injury based on the state victims not being federal victims is speculative, conclusory and fails to address the statutes and sentencing guidelines cited by Respondent in its Return and Answer (Doc. 16).

      **c.**    **The third and fourth factors disfavor injunctive relief.**

      When a plaintiff challenges a government policy, the third and fourth elements of the test for preliminary relief "merge" into a single consideration of the "public interest," *Nken v. Holder*, 556 U.S. 418, 435 (2009), which also favors the federal government here. As set forth in Part III.A., above, Petitioner's requested injunctive relief "invokes fundamental separation of powers issues between the federal judicial and executive branches *and* between the federal and state executive branches." *United States v. Bates*, 713 F. Supp. 3d 1153, 1155 (D. Utah 2024) (emphasis in original). Injunctive relief would be contrary to the public interest because it would upset the "inviolable rules of comity." *Zerbst*, 97 F.2d at 254. Additionally, the Ninth Circuit has acknowledged that "when the state's charges factually overlap with the federal charges" trying the defendant concurrently may "present administrative hurdles and safety concerns." *United States v. Myers*, 930 F.3d 1113, 1121 (9th Cir. 2019).

In short, this Court should reconsider and vacate the evidentiary hearing scheduled for Monday, September 29, 2025, because Petitioner's request for relief is barred as a matter of law and Petitioner has not, and cannot, make the required showing for injunctive relief.

### C. A hearing on a habeas petition is unnecessary in the absence of disputed issues of material facts.

An evidentiary hearing is required only when a petition for habeas corpus raises disputed questions of material fact. *Solheim v. Armstrong*, 859 F.2d 755, 757 (9th Cir.1988). *See also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (evidentiary hearing unwarranted when "the record refutes the applicant's factual allegations or otherwise precludes habeas relief"); *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (holding that when petitioner's claims can be resolved by reference to the state court record, an evidentiary hearing will be denied as futile); *Villafuerte v. Stewart*, 111 F.3d 616, 633 (9th Cir. 1997) (a petitioner's request to have the district court hear the same evidence heard by the state court is "not a valid reason for an evidentiary hearing in district court"); *Valle v. Banks*, No. CV 07-8230-CAS CT, 2008 WL 1818718, at *4 (C.D. Cal. Apr. 21, 2008) (rejecting request for hearing "because, even assuming petitioner's factual contentions are true, he is not entitled to habeas relief").

Here, while Petitioner requested an evidentiary hearing, it did not identify any disputed questions of material fact to be resolved at the hearing. (Doc. 17.) Nor could it, as the relevant facts here are straightforward and undisputed.

The Tucson Police Department (TPD) arrested Aguirre in the community without an arrest warrant and took him to a local hospital. (Ex. A, ¶ 2). He remained in TPD's custody until after a federal judge issued a federal arrest warrant at 1:16 p.m. on July 2, 2025. (*Id.* ¶ 3.) An FBI agent served Aguirre the federal arrest warrant at the hospital, and federal task force officers took him into federal custody, where he has remained since. (*Id.* ¶¶ 4-6.)

Pima County prosecutors, in tacit recognition that Aguirre was in primary federal

custody and that the Supremacy Clause means U.S. Marshals need not obey a state court writ, requested federal prosecutors' cooperation in securing a state court writ. (Doc. 1-4 at 3-5, 10.) The federal prosecutors declined in order to protect the integrity of their federal case. (*Id.* at 2.) Petitioner asked the state court for a writ, which the U.S. Marshals declined to honor, as Petitioner previously recognized they would. (*See* Doc. 1-4 at 3.) There are no material facts in dispute for this Court to consider. And, if there were, they would be irrelevant because Petitioner has not identified a cognizable legal claim that would allow the Court to issue a writ sending a federal defendant under its jurisdiction to another court.

### D. Petitioner's proposed hearing raises a host of privilege issues.

Petitioner's proposed hearing, besides being unnecessary and inappropriate as set forth above, also threatens to invade numerous privileges, including prosecutorial immunity, deliberative process and mental process privileges, and work product protections. Petitioner attached to the Petition a number of emails from U.S. Attorney's Office prosecutors and complains about prosecutorial decisions that cannot be explored at the requested evidentiary hearing for a number of reasons.

First, prosecutor testimony is foreclosed by prosecutorial immunity. Prosecutorial immunity covers "the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012). A core purpose of the immunity is to prevent "a deflection of the prosecutor's energies from his public duties." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). "[I]t would defeat a core purpose of absolute immunity if prosecutors could be called upon to justify all of their prosecutorial actions." *Karunyan v. Maricopa, Cnty. of*, No. CV-10-00198-PHX-ROS, 2015 WL 13747126, at *2 (D. Ariz. Feb. 3, 2015).

Second, the deliberative process privilege allows the government to withhold documents or prevent testimony that "reflect[s] advisory opinions, recommendations and

deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Communications*, 742 F.2d 1156, 1161 (9th Cir. 1984). It protects "the decision making processes of government agencies" to "prevent injury to the quality of agency decisions." *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975) (cleaned up). "The underlying premise of the privilege is that agency decision-making might be impaired if discussions within the agency were subject to public review, thereby discouraging 'frank discussion of legal or policy matters.'" *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 600 (N.D. Cal. 2009) (quoting *Sears*, 421 U.S. at 150). The privilege covers ongoing litigation, including the "theory of the case," "litigation strategy" and the "decision to commence litigation." *Sears*, 421 U.S. at 150.

Similarly, the mental process privilege "involves uncommunicated motivations for a policy or decision, [and] has been applied in both the adjudicative and legislative context." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003). It protects testimony of government officials who act in a judicial, quasi-judicial, or administrative decision-making capacity who have made decisions within the scope of that power. *Id.* It covers "testimony as to the mental processes by which the official arrived at such decisions, the manner and extent of the official's study of the subject, and his or her consultations with subordinates." *Id.* (quoting Federal Testimonial Privileges § 5:5). It includes "testimony concerning the mental activities of the official, the methods by which a decision was reached, the matters considered, the contributing influences, and the role played in the decision by the work or expressions of others." *Id.*

Finally, prosecutor testimony is foreclosed by the work product doctrine, which protects a prosecutor's factual information and mental impressions. *United States v. Nobles*, 422 U.S. 225, 238 (1975); *see also Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000). Each of these privileges would be threatened by the evidentiary hearing Petitioner seeks. For these additional reasons, the court should vacate the September 25, 2025, evidentiary hearing.

**IV.  Conclusion**

For the foregoing reasons, Respondents respectfully request this Court grant its Motion for Reconsideration and vacate the hearing currently set for September 29, 2025. The hearing violates separation of powers and comity principles; Petitioner has failed to identify a legal basis for the relief it seeks; Petitioner has not identified a disputed issue of material fact to be heard; and the hearing threatens privilege protections.

RESPECTFULLY SUBMITTED:  September 25, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Denise Ann Faulk*
DENISE ANN FAULK
SARAH S. LETZKUS
Assistant U.S. Attorneys
*Attorneys for Respondents*

/ MF Reconsideration

13