TIMOTHY COURCHAINE
United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant United States Attorney
Arizona State Bar No. 12700
Email: denise.faulk@usdoj.gov
SARAH S. LETZKUS
Assistant U.S. Attorney
Arizona State Bar No. 027314
Email: sarah.letzkus@usdoj.gov
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
*Attorneys for Respondents*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona,<br><br>Plaintiff/Petitioner,<br><br>v.<br><br>Pam Bondi, et al.,<br><br>Defendants/Respondents. | CV-25-00468-TUC-RM (MAA)<br><br>**MOTION TO STAY ORDER [DOC. 32]** |

By Order dated October 2, 2025 (Doc. 32), this Court granted the Petitioner's Application for Writ of Habeas Corpus Ad Prosequendum pursuant to 28 U.S.C. § 2241(c)(5) and directed the Attorney General, through the United States Marshals Service, to transport Julio Cesar Aguirre—who is in federal custody pending the resolution of criminal charges in the District of Arizona case number 4:25-cr-03393-RM-MAA—to be produced for an Arraignment, Initial Appearance and witness depositions in Pima County Superior Court case number CR20253494-001.[1] The Order incorrectly relies on

---

[1] The Arraignment and Initial Appearance was originally scheduled for Monday, October 6, 2025, but was continued by the Petitioner until November 5, 2025, to allow for the processing of the writ.

Section 2241(c)(5), which does not permit the Court to remove a federal detainee from federal custody over the federal government's objection; violates separation of powers and comity principles; and fails to consider the Ninth Circuit's instruction that the sovereign with physical possession of the defendant has the right to proceed with prosecution over other sovereigns. The Department of Justice is evaluating the Court's ruling, and the Solicitor General will determine whether an appeal is warranted. *See* 28 C.F.R. 0.20.[2]

Respondents respectfully request that the Court's order be stayed pending that evaluation and administratively stayed pending disposition of this motion. The standard for evaluating such a stay is similar to the standard for granting a preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009). A stay should be granted because Respondents can show a likelihood of success on the merits, irreparable injury in the absence of a stay, and that a stay is in the public interest and will not injure Petitioner. *Id.* at 426.[3]

Pursuant to LRCiv 7.3(b), Respondents have conferred with Petitioner, and Petitioner objects to the requested stay.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      Respondent Is Likely Correct on the Merits.**

     **A.      Section 2241(c)(5) Does Not Authorize the Relief Granted By This Court.**

Respondent is likely to succeed on the merits because Section 2241(c)(5) does not authorize the relief granted by this Court. "[A] federal writ of habeas corpus ad

---

[2] All appeals by the United States must be authorized by the Solicitor General. *See* Justice Manual § 2-2.121. In recognition of the time required by that process, the Federal Rules of Appellate Procedure provide up to 60 days in civil cases to file a notice of appeal. FRAP (a)(1)(B), (b)(1)(B). *See also id.*, Advisory Comm. N., 2011 Amend. (same reasons that justify additional time to answer in civil cases also "justify providing additional time to the Solicitor General to decide whether to file an appeal").

[3] In the Ninth Circuit, when a high degree of irreparable harm to the movant is shown, the movant is required to show only "serious legal questions going to the merits" to obtain a stay. *Manrique v. Kole*, 65 F.4th 1037, 1041 (9th Cir. 2023) (internal quotations omitted).

prosequendum secures the presence for trial of a criminal defendant who is held in a state's" or some other entity's "custody" at a federal trial. *Johnson v. Gill*, 883 F.3d 756, 759 n.2 (9th Cir. 2018). Such a writ does not serve to send away a federal detainee over the federal government's objection, for the writ's "customary" use is by "a jurisdiction not the same as that wherein the prisoner [is] confined." *Carbo v. United States*, 364 U.S. 611, 615 (1961). Put otherwise, the writ that could secure Aguirre's attendance in state court should emanate from an Arizona state court. *See Lawrence v. Willingham*, 373 F.2d 731, 732 (10th Cir. 1967) (per curiam) ("If a writ of habeas corpus ad prosequendum is to be used to bring [a federal prisoner] to trial in a Texas state court, the writ must issue from that court."). Then, upon receiving such a writ, the federal government may, but need not, acquiesce to the writ and temporarily loan out Aguirre. *See Ponzi v. Fessenden*, 258 U.S. 254, 261-62 (1922); *Johnson*, 883 F.3d at 761-62, 765.

The Court's reliance on *Barber v. Page*, 390 U.S. 719 (1968), and *United States v. Hooker*, 607 F.2d 286 (9th Cir 1979), for a different proposition is misplaced. In extraneous dicta that was not germane to the Supreme Court's holding, *Barber* states that Section 2241(c)(5) "gives federal courts the power to issue writs of habeas corpus ad testificandum at the request of state prosecutorial authorities" for "prospective witnesses currently in federal custody" but cited cases where federal courts issued the writ to bring out-of-district prisoners into a particular district court for a federal trial. 390 U.S. at 724 (citing *Gilmore v. United States*, 129 F.2d 199, 202 (10th Cir. 1942), and *United States v. McGaha*, 205 F. Supp. 949 (E.D. Tenn. 1962)). *Hooker* similarly said in dicta that Section 2241(c)(5) allowed "transfer of federal prisoners to face state charges." 607 F.2d at 288-89. But taking the dicta in either case as a binding holding would wrongly "parse" judicial opinions as if they were "statute[s]," when *Barber* and *Hooker* more broadly commented on ways for one sovereign to secure prisoners held by another for purposes of Confrontation Clause analyses. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023) (cautioning against "read[ing] too much into too little"); *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 352 n.12 (2005) ("Dictum settles nothing, even in the court

3

that utters it."). Moreover, *Barber* cited the Tenth Circuit's *Lawrence* decision holding that such an ad prosequendum writ must issue from a state court. 390 U.S. at 724. In short, *Barber* did not revise the "customary" use of ad prosequendum writs, and nothing suggests that Congress hid such an unconventional writ in Section 2241(c)(5).

The history of the writ of habeas corpus ad prosequendum further suggests the Tenth Circuit *Lawrence* decision is correct. That history is laid out in *Carbo v. United States*, 364 U.S. 611, 615-19 (1961), running from the Judiciary Act of 1789, to the recognition of the writ of habeas corpus ad prosequendum in *Ex parte Bollman*, 8 U.S. (4 Cranch) 75 (1807), to the ultimate enactment of 28 U.S.C. § 2241(c)(5) in 1948. Although not directly involving this issue, *Carbo* discussed the importance of the writ as part of a system of comity in which "an accommodation is so important between the federal and state authorities." 364 U.S. at 620. "That comity is necessary between sovereignties in the administration of criminal justice in our federal-state system is given full recognition by affording through the use of the writ both respect and courtesy to the laws of the respective jurisdictions." *Id.* at 621.

**B.** **The Order Violates Separation of Powers and Comity Principles.**

Separation of powers and comity principles support the federal government's request for a stay. Courts have long held that one sovereignty may "waive its strict right to exclusive custody of [a defendant] for vindication of its laws in order that the other may also subject him to conviction of crime against it," but "[s]uch a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it." *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922).

"The sovereign with priority of jurisdiction (also called 'primary custody') over a defendant may exercise its discretion to relinquish that primary custody to another sovereign, but '[t]his discretionary election is an executive, and not a judicial, function.'" *United States v. Bates*, 713 F. Supp. 3d 1153, 1155 (D. Utah 2024) (quoting *United States v. Warren*, 610 F.2d 680, 685 (9th Cir. 1980)). In other words, "when it comes to deciding whether to relinquish 'priority of jurisdiction' over a defendant, the executive branch – not

4

the judiciary – is the exclusive decisionmaker." *Id.* at 1155-56. A court "cannot meddle" in the federal executive branch's decision whether to relinquish primary custody, and "[t]his is especially true where, as here, the executive branch expressly opposes [the defendant's] transfer from primary federal custody to state custody." *Id.* at 1156.

"Congress expressly placed the defendant's custody in the hands of the executive branch, not the judiciary, which is consistent with long-standing separation of powers principles that vest 'the determination of custody and service of sentence . . . is a matter of comity to be resolved by the *executive branches* of each sovereign.'" *Id.* at 1158 (quotation omitted, emphasis in original). "[F]ederal courts do not exercise general oversight of the Executive Branch; they resolve cases and controversies consistent with the authority Congress has given them." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). "Courts do not sit to second-guess or override lawful exercises of executive discretion simply because a litigant is dissatisfied with the outcome. As the Supreme Court has long held, absent a clear statutory violation or constitutional transgression, it is not the role of the judiciary to interfere with how the Executive Branch carries out delegated authority." *Hanson v. Quick*, No. 25-CV-081-RAW-JAR, 2025 WL 1508450, at *7 (E.D. Okla. May 8, 2025), *report and recommendation adopted*, No. CIV-25-81-RAW-JAR, 2025 WL 1505427 (E.D. Okla. May 27, 2025), *citing Ponzi*, 258 U.S. at 261-62 (recognizing the Executive's primary authority to coordinate inter-sovereign custody arrangements).

The Court's order also interferes with the "inviolable rules of comity." *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938). Comity can only be freely given: "the 'rule of comity,' … means nothing more than *voluntary consent* of the officials or courts who have jurisdiction over the accused given to another court or sovereign to proceed against the accused in a different forum…. In this sense, comity is only a phase of consent by one sovereign to acts of another. Most of the problems of this field are worked out by executive and administrative officers of the various states without conflict. It is probably rare that one sovereign, if requested, does not yield to prosecution by another." *Strand v. Schmittroth*, 251 F.2d 590, 597 (9th Cir. 1957) (Emphasis added).

"But it does happen." *Id.* at n.11. And when it does, "[a]s courtesy cannot be enforced, neither can comity." *Id.* at 598. The jurisdiction with "physical possession of the body" of a prisoner is not "bound to consent" to yield the prisoner to the custody of another jurisdiction or to consent to his prosecution in the other jurisdiction. *Id.* at 600. Here, federal authorities have declined to consent to yield Aguirre to Petitioner for state prosecution until after the federal prosecution is complete. Such is well within the federal executive's rights under the rule of comity.

### C. The Federal Government Has Physical Possession of Aguirre and the Right to Proceed with Prosecution Over the State.

Respondent is also likely to succeed on the merits because it has control over Aguirre's person, and, thus, the right to prosecute Aguirre first under the Ninth Circuit's decision in *Strand v. Schmittroth*. 251 F.2d 590, 597 (9th Cir. 1957).

In *Strand*, the defendant was serving a term of probation imposed by a federal district court for a federal crime when he was arrested on charges that had previously been brought by the State of California. *Id.* at 593. The district court granted the defendant habeas corpus relief and ordered that he be released from state custody, reasoning that federal authorities had exclusive jurisdiction over him while he remained on probation based on federal charges, and, therefore, the state lacked the authority to prosecute him without prior consent by the United States and the district court. *Id.* at 593-94.

In an en banc decision, the Ninth Circuit reversed. *Id.* at 611. The Ninth Circuit explained that the state, as the sovereign with physical custody over, or possession of, the accused, had the right to proceed on its charges against the defendant. *Id.* at 598. The court explained that "actual physical possession" of the defendant "is the *sole criterion* of the power to proceed[.]" *Id.* at 599 (emphasis added). As the defendant was arrested on the state charges after he had been released on probation, it was "immaterial" whether the United States or the district court consented to the state proceeding on its charges against the defendant because he was no longer in the physical possession of the United States. *Id.* at 598. The court explained:

> In any discussion about the rights of sovereigns, the territories of which do not overlap, actual physical possession of one accused is the sole criterion of the power to proceed absent agreement or self imposed restriction. The power of the courts to adjudicate and sentence and of the authorities to imprison is based thereon. The reason is obvious. Where the body of the accused is in manual possession of one sovereign, surrender can be obtained by another such sovereign only by consent of the first or by force. The latter is unthinkable.

*Id.* at 599. As the defendant was in the physical possession of the state, it was "immaterial" that he was on probation for federal charges for purposes of the state's authority to proceed with its charges. *Id.* at 600. That is because:

> [a] multitude of cases indicate that, if the accused be brought personally before a court which has jurisdiction of the subject matter, he may be tried, convicted, sentenced and imprisoned. It makes no difference by what means, rightful or wrongful his body was brought into court. … The consent of no other sovereign is essential to the validity of the proceeding. The objection of no other sovereign is effective. Logically, it cannot be of moment that the accused is released on probation from the court of another sovereign and without violation of the probation order placed into the physical custody of the second sovereign and tried, sentenced, convicted and imprisoned by conviction in its court.

*Id.* "After the federal court had freed [the defendant] on probation, the state court acquired jurisdiction of [his] person by arrest", and consent by federal authorities was not necessary for the state to proceed under those circumstances. *Id.* at 601. "So long as [the state] ha[d] possession over the body of the accused," it had authority to proceed. *Id.* at 604.

Here, federal authorities have physical custody over Aguirre. Federal authorities have not consented to the state taking physical custody or possession of Aguirre to proceed on the state charges and, in fact, strenuously object. The United States has "possession over the body of the accused," and, therefore, it is the United States that has the power to proceed under these circumstances, not the state. *Id.* at 598-99; *see also Taylor v. Reno*, 164 F.3d 440, 445 (9th Cir. 1998) ("As in *Strand*, the state in this case, not the federal government, maintained physical possession of Taylor. 'The sovereign who lacks possession of the body 'permits' another to proceed against the accused....'") (quoting *Strand*, 251 F.2d at 606).

## II. The Remaining Factors Favor a Stay.

The remaining factors (whether Respondents will be irreparably harmed absent a

7

stay; whether issuance of the stay will substantially injure the other parties interested in the proceeding; and where the public interest lies) all favor a stay.

Allowing the state to engage in a parallel prosecution will delay and irreparably harm the federal prosecution, including federal victims. The Ninth Circuit has acknowledged that "when the state's charges factually overlap with the federal charges" trying the defendant concurrently may "present administrative hurdles and safety concerns." *United States v. Myers*, 930 F.3d 1113, 1121 (9th Cir. 2019). By ordering Aguirre to be made available to the state for his arraignment, initial appearance, and witness depositions, the Court is essentially ordering the commencement of Aguirre's state court prosecution, which will trigger Aguirre's speedy trial clock, *see* Arizona Rules of Criminal Procedure (ARCP) 4.2, 6.1, 8, and 14.4, and require the state to commence disclosure, ARCP 15.1(a)-(e), which the federal government will have no ability to regulate.

Defendants in state court have a right to interview all potential witnesses in a criminal case, which is a right they do not possess in federal court. *See* ARCP 15.1. Most of the initial investigation in this case was conducted by the Tucson Police Department, including evidence collection and forensic testing. Therefore, many of the witnesses in the federal case will also be witnesses in the state case and are subject to pretrial interviews in the state prosecution. In allowing the depositions of potential government witnesses to take place in the state case, the Court is essentially ordering federal government witnesses to be interviewed pretrial, which is something it would not have the authority to do in the federal prosecution. *See* Fed. R. Crim. P. 16. The government will not be able to participate in the depositions, and the depositions will not be able to be used in the federal prosecution. ARCP 15.3. They will, however, trigger disclosure and discovery obligations for the government and will contribute to the creation of multiple, potentially inconsistent statements that could be used to attack the integrity of the federal case. These statements would qualify as Jencks Act statements, 18 U.S.C. § 3500, and could also implicate *Brady*/*Giglio*/*Henthorn* obligations for the government. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Henthorn*, 931

F.2d 29 (9th Cir. 1991). The government will be forced to rely on the state's willingness to disclose those interviews as they occur, as there is no mechanism to compel their disclosure, even though they may trigger discovery obligations for the government. *See generally Brady*, *Henthorn*, and *Giglio*, *supra*.

The state proceedings will not be limited to the hearings that the Court has ordered to occur. Once the state proceedings commence, pretrial litigation will begin, and pretrial motions are likely to be filed and set for hearing. As both the state and federal prosecutions are based on the same set of facts, and involve much of the same evidence and witnesses, such hearings will involve witness testimony and argument over legal issues that will likely impact and could potentially damage the federal prosecution.

Just as importantly, as noted above, the decision of whether to engage in a parallel proceeding is exclusively the province of federal prosecutors under the Supremacy Clause and separation of powers here. Issuing injunctive relief that intrudes on these interests, in excess of judicial power, is an irreparable injury to the United States as a matter of law. *See Trump v. Casa, Inc.*, 606 U.S. 831, 860 (2025) ("The question before us is whether the Government is likely to suffer irreparable harm from the District Courts' entry of injunctions that likely exceed the authority conferred by the Judiciary Act. The answer to that question is yes."). Additionally, Petitioner's purported irreparable injury based on the state victims not being federal victims is speculative and conclusory.

When the government is a party, the Court's analysis of the public interest and the equities merge. *Nken*, 556 U.S. at 435. For similar reasons, the last two factors favor an administrative stay and a stay pending consideration and disposition of any appeal. As set forth in Part I.B. and I.C., above, Petitioner's requested injunctive relief invokes fundamental separation of powers issues between the federal judicial and executive branches *and* between the federal and state executive branches. Injunctive relief would be contrary to the public interest because it would upset the inviolable rules of comity. *See* Part I.B-C, above.

The stay is further supported here because this Court's Order disrupts the status quo rather than maintaining it. "'Mandatory preliminary relief . . . is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.'" *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*, 571 F.3d 873, 879 (9th Cir. 2009) ("In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'") (quoting *Anderson*, 612 F.2d at 1115).

### III. Conclusion.

For the foregoing reasons, this Court should enter a stay pending the consideration and disposition of any appeal that is authorized by the U.S. Solicitor General and an administrative stay pending disposition of this motion.

RESPECTFULLY SUBMITTED: October 9, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Sarah S. Letzkus*
DENISE ANN FAULK
SARAH S. LETZKUS
Assistant U.S. Attorneys
*Attorneys for Respondents*