**LAURA CONOVER**
**PIMA COUNTY ATTORNEY**
J. William Brammer, Jr, SBN 002079
william.brammer@pcao.pima.gov
James W. Rappaport, SBN 031699
Deputy County Attorneys
james.rappaport@pcao.pima.gov
32 North Stone Avenue
Tucson, Arizona 85701
Telephone: (520) 724-5600
*Attorneys for the State of Arizona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The State of Arizona, by and through Pima County Attorney, Laura Conover,<br><br>*Plaintiff/Petitioner*,<br><br>v.<br><br><br>Pam Bondi, et al.,<br><br><br>*Defendants/Respondents*. | CV-25-00468-TUC-RM (MAA)<br><br>**RESPONSE TO MOTION TO STAY ORDER** |

Plaintiff the State of Arizona by and through Pima County Attorney, LAURA CONOVER (herein the "State"), respectfully submits the following Response to the Government's Motion to Stay Order. Nothing in the record or applicable law supports either a stay pending appeal or an administrative stay. The Government's purported harms all are speculative. They also rest on the same broad appeals to executive power that this Court already has considered and rejected—they too are unsupported by the law. The Court should deny the Motion and allow its October 2, 2025, Order ("Order") to be implemented.

## LAW AND ARGUMENT

To justify a stay, the Government must show (1) a strong likelihood of success on the merits, (2) irreparable harm without a stay, (3) relative injuries to the parties, and (4) the public interest supports a stay. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). The first two factors are weighted the most heavily; if the movant cannot show either, the Court need not consider factors three or four. *Id*. Irreparable harm and injuries to the parties must be more than mere possibilities. *Id*. All four factors cut against the Government and in favor of the State.

First, the Government's argument is foreclosed by black letter law. The text of the federal habeas statute, and the glosses the United States Supreme Court and Ninth Circuit have applied, authorize this Court to grant the relief it did. Second, the Government cannot show irreparable harm. The purported harms it asserts in its motion are speculative. Likewise, it failed to raise, or even mention, them in any of its papers or during the September 29, 2025, Hearing. It should not be permitted to inject them into the litigation only now, after the Court has ruled.

Third, it is the State that bears the far greater risk of injury every day the Government refuses to produce Aguirre to be prosecuted. It remains undisputed that a delay in preserving victim testimony in Aguirre's state-court prosecution risks spoliation of evidence critical to the State's case, and a risk that at least two of the victims may not live to see Aguirre held accountable for the crimes he committed against them. On the flip side is the Government's claim that starting the state-court prosecution "will *likely* impact and *could potentially* damage the federal prosecution." (Doc. 34 at 9) (emphasis added). In its own words, any purported harm to the Government's case is speculative—it "could potentially" happen. This does not constitute the kind of legal harm justifying either a stay pending appeal or administrative stay.

Moreover, the United States mischaracterizes the State's request. The State never has demanded Aguirre be released into its custody from federal custody. Aguirre need never leave federal custody. The State has agreed, as the Court has noted in its Order, Aguirre may appear virtually from federal confinement for his initial appearance and arraignment. For his depositions in the state court matter, those will occur in the Federal Courthouse in Tucson, where he will remain in federal custody. Nor has the State objected to the United States being present at, and participating in as it wishes, those depositions—and going first should it choose to do so. The State's purpose is to preserve evidence, not jump the line or undermine comity between sovereigns. Exactly the opposite is true: this approach furthers comity and protects the interests of both the United States and the State of Arizona.

Finally, the public interest does not favor any type of stay. Again, the Government has not shown this Court's writ poses any concrete harm to its case. On the other side is a genuine risk of spoliation of evidence critical to the State's case, a risk that increases every day the Government is permitted to drag its feet.

Nothing in the record before the Court justifies either a stay pending appeal or an administrative stay. This Court should allow its Order to be implemented.

**I.   The Government is unlikely to succeed on the merits.**

The Government resurrects the same argument it raised twice before, namely that this Court lacks the authority to compel it to make Aguirre available for state-court proceedings. This argument blinks the plain text of 28 U.S.C. § 2241(c)(5) as well as binding precedent interpreting that text. The Government likely will not succeed on the merits of its claim.

The federal courts may grant writs of habeas corpus ad prosequendum to compel the presence of a federal inmate where "[i]t is necessary to bring him into

court to testify or for trial." 28 U.S.C. § 2241(a), (c)(5). They can do so at the request of state authorities. *Barber v. Page*, 390 U.S. 719, 724 (1968) (noting "28 U.S.C. § 2241(c)(5) gives federal courts the power to issue writs of habeas corpus ad testificandum at the request of state prosecutorial authorities."); *United States v. Hooker*, 607 F.2d 286, 288–89 (9th Cir. 1979) (noting writs issued under 28 U.S.C. § 2241(c)(5) allow transfer of federal prisoners to face state charges); *accord Flick v. Blevins*, 887 F.2d 778, 781, n.5 (7th Cir. 1989) ("A writ of habeas corpus ad prosequendum enables [any jurisdiction, whether federal or state] to take temporary custody of a prisoner confined within another jurisdiction, and indict, prosecute and sentence such prisoner.")

The Government's sole counterargument is that these glosses on 28 U.S.C. § 2241(c)(5) are obiter dicta and therefore can, and should, be freely ignored. As a sister circuit noted, "there is dicta, and then there is Supreme Court dicta." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006). The Ninth Circuit apparently agrees, particularly in the context of statutory interpretation:

> Where the Supreme Court is providing a construction of a statute to guide the future conduct of inferior courts, [] the Court's statements as to the general meaning of the statute must be given considerable weight.

*United States v. LaBinia*, 614 F.2d 1207, 1210 (9th Cir. 1980) (citing *United States v. Bell*, 524 F.2d 202, 206 (2d Cir. 1975)) (cleaned up). "Moreover, it is a general rule that unless the Supreme Court expressly limits its opinion to the facts before it, it is the principle which controls and not the specific facts upon which the principle was decided." *Id*. (citing *Walker v. Georgia*, 417 F.2d 5, 8 (5th Cir. 1969)).

The Ninth Circuit does not treat considered dicta from the Supreme Court lightly. Rather, it accords them appropriate deference. *See United States v. Baird*,

85 F.3d 450, 453 (9th Cir.1996) ("we treat Supreme Court dicta with due deference"). Supreme Court dicta "have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold;" accordingly, the Ninth Circuit does "not blandly shrug them off because they were not a holding." *Zal v. Steppe,* 968 F.2d 924, 935 (9th Cir.1992) (Noonan, J., concurring and dissenting); *United States v. Montero-Camargo*, 208 F.3d 1122, 1132, n.17 (9th Cir. 2000)

Here, the United States Supreme Court—and the Ninth Circuit—have expressly interpreted 28 U.S.C. § 2241(c)(5) as giving federal courts the power to issue writs of habeas corpus to transfer federal inmates to temporary state custody at the request of state authorities. *Barber*, 390 U.S. at 724; *Hooker*, 607 F.2d at 288-89. Both courts were extremely clear in their interpretation of the federal habeas statute. Nothing in the cases the Government cites says otherwise.

And although the Government cites a long chain of case law on executive power and comity, those cases provide no ballast for its theory of untrammeled executive authority. Nothing in those cases exempts the executive from 28 U.S.C. § 2241(c)(5) or its judicial glosses. Nothing in those cases stands for the novel proposition that separation of powers or comity principles exempt the executive from having to explain itself when it asserts harm. In short, the Government does not seek only a legal blank check to ignore court orders, it also asserts a privilege to not explain why. The law does not and cannot permit this.

**II.  The Government has cited nothing in the record showing that it would be harmed irreparably without a stay of this Court's judgment.**

The Government asserts two reasons it will be harmed irreparably without a stay. First, the initiation of state-court proceedings would trigger disclosure obligations that could result in "potentially inconsistent statements that could be

used to attack the integrity of the federal case." (Doc. 34 at 8.)[1]  And second, the Court's Order—the Government argues—irreparably harms the separation of powers. (Doc. 34 at 9.)  Neither holds water.

First, in the Government's own words, any harm to its case is speculative. Irreparable harm cannot be a mere possibility. *Nken*, 556 U.S. at 434. It must be more than that. Setting aside the semantic framing of the Government's alleged harm, it does not even attempt to provide an example of a "potentially inconsistent" statement that may result from pretrial discovery in the state-court case much less how it could undermine the Government's prosecution. Definitionally, this is speculation. It cannot form the basis of a claim of harm.

Second, and as discussed above, general appeals to separation of powers are insufficient to justify a stay. The Government must articulate a specific factual basis for its asserted harm—something more than a mere possibility. *Nken*, 556 U.S. at 434. Its assertion that a statutorily authorized court order undermines the separation of powers is unsupported by the cases it cites and, in any event, is too speculative to constitute cognizable harm in the context of a stay request.

### III. Both the equities and public interest cut against the Government and in favor of the State.

As the Government points out, the third and fourth factors merge when the Government is a party. *Nken*, 556 U.S. at 435. It regurgitates the same argument as to the third and fourth factors—both vertical and horizontal separation of powers

---

1. Notably, the Government asserts this for the first time here. In its prior papers, the Government did not mention this. Indeed, in response to this Court's queries about prejudice at oral argument, the Government refused to answer, citing separation of powers and comity principles. The Government should not be permitted to inject new arguments or facts in its Motion that were not presented previously. *Midway Fin. Corp., Ltd. v. Walters*, 980 F.2d 737 (9th Cir. 1992).

principles, the Government asserts, militate in favor of a stay. (Doc. 34 at 9.) Not so.

As discussed above, the Government's asserted harm is not only speculative but abstract, while the State's is concrete and, we would note, undisputed: the undisputed evidence shows two of the victims in Aguirre's state-court case are elderly and have health conditions that make any delay risky. Delay in securing their testimony risks spoliating evidence vital to the State's case. It also poses a risk those victims and their families may never see Aguirre held accountable for the crimes he committed against them.

The Government suggests "many of the witnesses in the federal case will also be witnesses in the state case. . . ." (Doc. 34 at 8.) Indeed, every one of these "witnesses" all are *victims* of the crimes the State has alleged Aguirre committed. What possible motive does any of them have to state in either proceeding anything other than the truth, which one presumes will be identical every time it is given? How does this possibly "contribute to the creation of multiple, potentially inconsistent statements that could be used to attack the integrity of the federal case[?]" (Doc. 34, p. 8, ll. 24-25). These reasons the Government offers to preclude the state prosecution from proceeding make no logical sense, and the Court should reject them.

The Government does not dispute that the crimes Aguirre committed against those victims appear nowhere in the federal indictment. The State has a strong public interest in seeing its criminal laws enforced. Every day the Government refuses to produce Aguirre, it permits the possible spoliation of evidence, undermines the public interest in seeing State laws enforced, criminals held accountable, and victims given justice.

Ordinarily, the executive is entitled to a presumption of regularity, i.e., a rebuttable presumption that the official acts of their agency heads and employees are correct and undertaken in good faith. *Reichle v. Howards*, 566 U.S. 658, 669 (2012). This includes prosecutorial decision-making by the United States Attorneys and their assistants. *Id*. In an ordinary case, a request by the Government for additional time to consider its litigation strategy would be reasonable and uncontroversial. That is not this case. From the outset of this litigation, the Government has taken positions that strongly undermine the presumption that its prosecutors are acting in good faith. The positions it has taken are contradictory, factually unsupported, contrary to settled law, or all three. The Government has refused to justify its decision either to the State or this Court. Only now that the Court has ruled does it offer an explanation as to why it opposes Aguirre's virtual participation in state-court proceedings. This Court should not afford the Government the benefit of the doubt here. Equity does not permit a stay of any kind in this case.

**CONCLUSION**

Respectfully and candidly, the Government's position here is consistent with the topsy-turvy positions it has taken in courtrooms around the country: text and precedent do not matter, but if they do, the executive has a free hand to ignore both. The Government seeks to carve out for itself yet a new exception to the rules, a law-free zone in which it is free to ignore the directives of federal and state courts. Indeed, the Government's argument is broader than that—it not only opposes the relief requested, but the Government also rejects this Court's authority to even ask it for justification. This Court should deny the Motion.

Respectfully submitted October 14, 2025,

        LAURA CONOVER
        PIMA COUNTY ATTORNEY

By   /s/ *James W. Rappaport*
       J. William Brammer, Jr.
       James W. Rappaport
       *Deputy Pima County Attorneys*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the registered CM/ECF users. Copies sent by U.S. Mail to the following:

**Denise Ann Faulk**
**Sarah S. Letzkus**
Assistant United States Attorneys
405 West Congress Street, Suite 4800
Tucson, Arizona 85701
*Counsel for Defendants/Respondents*

*/s/ James W. Rappaport*